In the matter of the estate of CHARLES A. WOOLSEY, deceased.

ALICE M. WOOLSEY and VIRGINIA M. WOOLSEY, appellants,

*v.*

FRANK WOOLSEY and JAMES P. NORTHROP, executors,
respondents.

[Argued March 28th, 1905.   Decided December 6th, 1905.]

A testator, after bequeathing two pecuniary legacies, devised and bequeathed the residue of his estate to his executors in trust, (1) to set apart a fund and pay the income to his daughter during her life;   (2) out of the income derived from the remaining portion of his estate to pay annuities to his daughter and daughter-in-law, and apply a sum for the use of his grandson during minority.   There was no income to pay the annuities or the sum allowed for the grandson, but the executors paid moneys as annuities, and as an allowance for the grandson, and sought in their account to charge these payments against the *corpus* of the estate, which was needed to pay the legacies and meet the trust fund for the daughter.—*Held*, that they are estopped from denying that they had received income from which to make these payments, and are not entitled to an allowance for the payments as against the *corpus* of the estate.

On appeals from decrees of the prerogative court advised by Vice-Ordinary Bergen, whose opinion is reported in *67 N. J. Eq. 574.*

*Mr. Randolph Perkins* and *Mr. Richard V. Lindabury,* for the appellants.

*Mr. Charles L. Carrick* (*Mr. Robert L. Lawrence,* on the brief), for the respondents.

The opinion of the court was delivered by

SWAYZE, J.

Charles A. Woolsey died July 4th, 1895.   By his will he bequeathed $5,000 to Sarah A. Newell and $10,000 to Virginia

M. Woolsey. He devised and bequeathed the residue of his estate to his executors in trust, (1) to set apart $20,000 and pay the income therefrom to his daughter, Alice, during her life; (2) out of the income derived from the remaining portion of his estate to pay therefrom to his daughter, Alice, $1,000 per year, and to his daughter-in-law, Virginia M. Woolsey, $2,000 per year, and to pay and apply for the use of his grandson, Herbert W. Woolsey, during his minority, a sum not exceeding $1,000 per annum. Other provisions as to the disposition of the estate are not material to the present case.

A large part of the apparent assets of the estate was invested in the C. A. Woolsey Paint and Color Company. The testator, in view of this fact, made the following provisions:

"It is my will, and I do hereby direct that, with the exception of the funds necessary to pay legacies and create the trust estates hereby made, all surplus dividends and other moneys belonging to me and left by me at my death in the C. A. Woolsey Paint and Color Company shall be and remain therein as a surplus fund for the benefit of said business until the division of my estate in the manner herein provided. .

"I direct that the amount to be paid to my daughter, daughter-in-law and grandson, annually, as herein specified, shall, so far as practicable, be paid out of the income of my estate other than that derived from the C. A. Woolsey Paint and Color Company, and that only so much shall be taken from said company as may be necessary to make up the deficiency; and that all surplus accruing shall be and remain in said business for the purpose of increasing the surplus moneys or working capital thereof. In the event of the income of my estate being insufficient for any current year to pay such annual amounts, I direct that the deficiency be drawn from the accumulation of surplus income left by me or my executors in said company.

"It is my will, and I direct, that during the minority of my grandson, Herbert W. Woolsey, and in case he shall so long live, the shares of stock owned by me in the C. A. Woolsey Paint and Color Company be not disposed of, but held by my executors and trustees as part of my estate, and that such of my executors as are individual stockholders therein be elected to positions of trust and equal profit therein.

"And I further direct that my executors and trustees shall not be held to account for any diminution in my estate by reason of continuing my investments in and holding the stock of said corporation as a portion of their trust property and of my estate."

No inventory of the estate was ever filed by the executors. The paint company became insolvent in January, 1903, and one of the executors who had been active in its management died about

the same time. Thereupon, on July 30th, 1903, the surviving executors filed an account, to which Alice Woolsey and Virginia M. Woolsey excepted. Some of these exceptions were sustained by the orphans court, and an order was made requiring the executors to give security in the sum of $30,000 for the faithful performance of their duties under the will. Upon an appeal to the prerogative court the vice-ordinary advised the reversal of both decree and order. From the decrees of the prerogative court, these appeals were taken by the exceptants.

The exceptions to the account which were sustained by the orphans court and disallowed by the prerogative court were to the following claims for allowances to the executors:

1. For $507.37, for money paid by the executors to the paint company on September 25th, 1895.

2. For $14,832.82, paid to Virginia M. Woolsey on account of annuity.

3. For $7,499.72, paid to Alice Woolsey on account of annuity.

4. For $4,450, paid to Virginia M. Woolsey, guardian of Herbert W. Woolsey.

By an answer to the petition of appeal in the prerogative court, the exceptants sought to question the adverse action of the orphans court on certain exceptions, as is permitted by the rules of the prerogative court on appeal from a decree of an orphans court on the settlement of accounts (rule 2). The petition of appeal in this court complains of the action of the prerogative court upon these exceptions, and they must therefore be considered. They are:

1. The allowance to the executors of $500 paid R. A. Simpson, December 23d, 1896.

2. The failure to charge the executors with a dividend of December 1st, 1895, on the paint company stock.

3. The failure to charge the executors with a similar dividend of December 1st, 1896.

To deal, first, with the four items which the orphans court refused to allow as a credit to the executors, the item of $507.37 arose in the following way: Several small debts of the testator, amounting in all to the sum mentioned, were paid by the paint

company and charged to Mr. Woolsey's account, and the amount was repaid to the company by the executors as soon as they were in funds. We think the orphans court was right in refusing to allow this payment. The paint company was at the time heavily in debt to the estate, and there was no reason why the amount paid by it and charged against Mr. Woolsey's account should be repaid. By taking this course, the executors ultimately lost this amount unnecessarily.

The other three items may be disposed of together. In considering the propriety of the action of the orphans court, it is to be borne in mind that these items concern only the allowance side of the account. The executors have not been charged with assets which they failed to collect, nor with any loss by reason of a continuance of the testator's investments in the paint company, nor with interest which they failed to receive through mismanagement. They were charged by the orphans court only with the sums which by their own account they admitted having received. The case does not therefore involve a construction of the clauses of the will authorizing a continuance of the testator's investments in the paint company, nor does it involve the jurisdiction of the orphans court to charge executors with assets which they may have failed to receive through negligence. The only question is as to the propriety of the claim for allowance of the items above specified.

To understand the controversy it is necessary to set forth the state of the account between the testator and the corporation at the time of his death, and subsequent dividends and payments. There was standing to his credit on the company's books at his death $14,049.61. On August 1st, 1895, a dividend was credited amounting to $6,599.20, and on November 30th, 1895, a further divdend of $2,282.20. Beginning with October, 1896, payments were made by the company from time to time and charged to this account. At the time of the insolvency the balance of the account was $5,192.26. The executors proved a claim for this amount with the receiver and were paid a dividend of $2,336.52. As the payments were made from time to time by the company, they were paid to Virginia M. Woolsey, individually and as guardian for her son, and to Alice Woolsey, as

payments on account of the annuities provided by the will. If these payments are allowed as claimed by the executors, the assets in their hands will fall short of meeting the amount required for the legacies to Mrs. Newell (who has had no interest on her legacy) and Virginia M. Woolsey, and nothing will be left to make up the trust fund of $20,000 for the testator's daughter, Alice. By the method of accounting adopted by the prerogative court, large sums will have been paid for the annuities which by the will were subject to the legacies, and these payments will have been made at the expense of the legacy to Virginia M. Woolsey and the trust fund provided for Alice Woolsey. It is not to the point that most of the moneys will have been received by the legatees. The testator was careful to distinguish between the legacies and the trust fund, on the one hand, and the annuities on the other. The legacies and the trust fund were to be first provided for. The annuities were to be paid out of the income from the remaining portion of his estate. It is manifestly to the disadvantage of Virginia M. Woolsey and Alice Woolsey to have the legacy and the trust fund depleted by the payment of moneys which were paid and received on account of the annuities.

As was said by the chief-justice in *Appleton* v. *American Malting Co., 65 N. J. Eq. (20 Dick.)* 375, 381, it is absurd to say that a person suffers no wrong who has been unwittingly induced to exhaust his principal by the mistaken or fraudulent representation of those to whom he had entrusted it that what has been paid to him is income. The annuities were payable only out of income derived from the estate after setting aside enough money to pay the legacies. By paying the annuities the executors represented to the annuitants that they had income out of which to make these payments after paying the legacies. Having led the annuitants to act on this belief, the executors are estopped from asserting the contrary.

Since the executors are estopped from denying that they had income available for the annuities, after payment of the legacies, it can make no difference whether they are surcharged with this amount and allowed for the payments on account of annuities, or whether they are disallowed these payments as a credit

against the *corpus* of the estate, which is needed to pay the legacies.

The sum of $14,049.61 due the testator from the company at the time of his death was clearly a part of the *corpus;* the dividend of $6,599.20 declared within a month of his death must also have been a part of the *corpus.* *Lang* v. *Lang's Executor,* *57 N. J. Eq.* (*12 Dick.*) *325.*

Although the dividend of November, 1895, may have been treated as earnings of the company after the testator's death, and applicable to annuities, that dividend has never been paid, for all the payments have been treated by the corporation by the method of keeping the account, and by the executors by filing a claim with the receiver for the balance only, as having been made upon the open account, and therefore applicable to the earliest items of the account, and the balance still due after crediting the amount paid by the receiver exceeds the amount of the November dividend.

Although the dividend paid by the receiver was based in part upon this November dividend, and may therefore be regarded as income to that extent, the executors are not entitled to the allowance as claimed, for they were allowed by the orphans court $4,959.74 for moneys paid Alice and Virginia Woolsey as interest on the legacies, as distinguished from the sums paid as annuities. This sum was allowed, although the executors failed to charge themselves with any income on the securities or cash actually in hand, and it far exceeds the total dividend paid by the receiver. They have therefore actually had allowance for the amount received from the company so far as it can be called income.

The testator did indeed provide that the amount to be paid to his daughter, daughter-in-law and grandson *annually* should, as far as practicable, be paid out of the income of his estate other than that derived from the paint company; but this provision related only to the annuities, or, as the testator said, "the amount to be paid annually," and this provision of the will became of no importance in the actual situation, as there never was an income out of which the annuities could be paid.

If the executors had followed the directions of the will, the assets actually received by them would have sufficed for the legacies and the Alice Woolsey trust fund. They chose instead to assume to pay annuities which they had no income to meet. They are not entitled to reimburse themselves at the expense of the legacies which the testator said should be paid before the annuities. We think, therefore, that the orphans court was right in not allowing the executors for these payments.

Of the exceptions to the account which were disallowed by the orphans court, three only were complained of in the answer to the petition of appeal. Two of these were to the failure of the executors to charge themselves with certain dividends of the paint company; these exceptions are not sustained by the proofs and the action of the orphans court was right. The third complained of an allowance for $500 paid to Simpson, one of the executors. The claim of the executors is that the money had been paid by Simpson to Alice Woolsey, and that he was entitled to be reimbursed therefor. The testimony as to this payment is unsatisfactory, and no voucher from Alice Woolsey is produced. One of the executors testified that Simpson advanced the money in some way or other; that he must have paid the $500; that the witness never signed an estate check unless he was morally certain that it was all right. The other executor testified that he never signed an estate check without being thoroughly satisfied that the amount was correct; that Virginia was being paid $250 interest; that Alice was looking to Simpson and he was taking care of her; that the witness must have known at the time; that it was a good while ago to recall. In the absence of a voucher from Alice Woolsey, we think the evidence insufficient to warrant a credit of $500 for money paid to the deceased executor. This exception should have been sustained.

The prerogative court also reversed the order of the orphans court requiring the executors to give security. This order was made under section 140 of the Orphans Court act (*P. L. 1898, p. 767*), which authorizes the court to require security whenever proof is made to its satisfaction that the property in the hands of the executor is unsafe, insecure, or in danger of being wasted.

We think that the conduct of the executors in using money which should have been paid to the legatees or invested to secure the trust fund for the testator's daughter to pay annuities which should have been paid out of income received after paying the legacies and setting apart the trust fund justified the conclusion that the property was unsafe in the hands of the executors. The amount of assets actually admitted to be still in their hands is a little less than $6,000. The additional amount with which they are chargeable is over $27,000. We think a bond of $30,000 is not excessive.

The decrees of the prerogative court should be reversed. The decree of the orphans court upon the accounting should be reversed and the account restated in accordance with the views herein expressed. The order of the orphans court requiring security should be affirmed. The exceptants are entitled to costs in both courts.

On appeal from decree on accounting:

*For affirmance*—None.

*For reversal*—The Chief Justice, Dixon, Garrison, Garretson, Pitney, Swayze, Bogert, Vredenburgh, Vroom, Green, Gray—11.

On appeal from order that executors need not give security:

*For affirmance*—Garrison—1.

*For reversal*—The Chief Justice, Dixon, Garretson, Pitney, Swayze, Bogert, Vredenburgh, Vroom, Green, Gray—10.